# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ADAM S. MCCULLOUGH,<br>On behalf of himself, and all individuals<br>similarly situated<br>2486 Osceola Ave<br>Columbus, OH 43211 | :<br>:<br>:<br>:<br>:<br>: |
|        Plaintiff, | :<br>: |
| v. | :<br>:   CASE NO. 2:23-cv-767 |
| VELOCITY ASSET MANAGEMENT, LLC<br>(VELOCITY INVESTMENTS, LLC)<br>c/o Corporation Service Company<br>3366 Riverside Dr. Suite 103<br>Upper Arlington, OH 43221 | :<br>:<br>:<br>:<br>:<br>: |
| And, | :<br>: |
| JAVITCH BLOCK, LLC<br>c/o Brian Block<br>1100 Superior Ave., 19th Floor<br>Cleveland, OH 44114 | :<br>:<br>:<br>:<br>: |
|       Defendants. | :<br>: |

## CLASS ACTION COMPLAINT

Now comes ADAM S. MCCULLOUGH ("Plaintiff") and sets forth below his COMPLAINT against VELOCITY ASSET MANAGEMENT, LLC (VELOCITY INVESTMENTS, LLC) ("Velocity"), and JAVITCH BLOCK, LLC ("JB") (or collectively "Defendants"). Plaintiff's COMPLAINT contains CLASS Claims against Velocity and certain RESERVED CLASS claims against Velocity and JB.

1

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this matter because Plaintiff's case seeks to resolve a federal question within the meaning of 28 U.S.C. §1331, and in particular, whether Velocity and JB violated provisions of the Fair Debt Collections Practices Act ("FDCPA") found at 15 U.S.C. §1692 et seq.

2.    This Court has supplemental jurisdiction over Plaintiff's claims under the Ohio Consumer Sales Practices Act ("OCSPA") found at R.C. §1345.01 et seq. as they are so related to his federal claims that they form part of the same case or controversy within the meaning of 28 U.S.C. §1367(a).

3.    This Court maintains personal jurisdiction over Defendants based upon Defendants' (i) business contacts within this federal district; (ii) presence within this federal district, and (iii) consent to personal jurisdiction within this federal district.

4.    This Court is the proper venue for this action pursuant to 28 U.S.C. §1391(b)(2).

## ALLEGATIONS

5.    On or around June 7, 2015 Plaintiff executed two (2) separate Retail Installment Sale Contracts for the purchase of two (2) separate 2003 BMW 7-Series automobiles from Jeff Wyler Columbus, Inc.

6.    Both Retail Installment Sales Contracts were assigned to Consumer Portfolio Services, Inc., also known as CPS, Inc. ("CPS").

7.    At all times relevant to these proceedings, Plaintiff's residence address has been the same as that stated in the caption of this pleading.

8.    Within a year following Plaintiff's execution of the two Retail Installment Sales Contracts, Plaintiff lost his job, and eventually went into payment default.

9.      Upon information and belief, Plaintiff's payment default occurred in June 2016.

10.     With respect to the CPS account (#0015521867) which involved the 2003 BMW 7-Series (VIN # ending 0515), CPS eventually engaged in self-help repossession and sold the vehicle at auction on September 15, 2017.

11.     On or around December 19, 2019, CPS sold CPS account (#0015521867) together with 1,854 other CPS accounts to Velocity.

12.     Velocity paid CPS $158,606.87 for these accounts which had account balances in the total combined amount of $15,774,600.68.

13.     On May 17, 2022, Velocity through its Ohio agent JB, sued Plaintiff in the Franklin County, Ohio Municipal Court ("FCMC") for $7,717.93[1].

14.     Following the above-described sale of the vehicle by CPS in 2017, Plaintiff has no recollection or records to suggest that CPS or any third party ever sought to recover a deficiency balance.

15.     Velocity's FCMC complaint represented that prior to the FCMC suit, Velocity notified Plaintiff of the assignment of the debt from CPS and demanded payment.

16.     As set forth above, Plaintiff had no records or independent recollection of receiving any written or other communications from Velocity prior to receiving service of process on the FCMC complaint – which occurred on May 25, 2022.

17.     Further, Plaintiff had no records or independent recollection of receiving any written or other communications from JB prior to receiving service of process on the FCMC complaint – which occurred on May 25, 2022.

---

[1] See, *Velocity Investments, LLC v. Adam S. McCullough*, Case No., 2022CVF014452 (Ohio Misc. 2022 FCMC).

18. Plaintiff filed a *pro se* answer on June 10, 2022 in the FCMC action and attempted to mediate with Velocity and JB on or around August 3, 2022.

19. During the mediation, Plaintiff expressly informed JB that he did not receive any form of verbal or written communication from either Velocity or JB prior to service of process on the FCMC suit and that, more importantly, he believed that the FCMC lawsuit was time-barred.

20. Plaintiff reasonably demanded that Velocity and JB dismiss the FCMC suit with prejudice and compensate him with a very small sum of money for his trouble and to allow him to, among other things, repair his credit.

21. Velocity and JB flatly refused and instead filed a cursory (and form-based) request for leave to file a motion for summary judgment together with a cursory (and form-based) motion for summary judgment on September 7, 2022.

22. The FCMC granted Velocity and JB's leave motion on September 20, 2022.

23. Velocity and JB's motion for summary judgment was predicated solely upon Defendants' assertion that Plaintiff had failed to provide timely responses to a set of requests for admissions that JB alleged were sent to Plaintiff on or around June 27, 2022.

24. Plaintiff swore (and continues to swear) that he never received any written discovery requests from either Velocity or JB.

25. The discovery requests allegedly served by Velocity and JB (which were attached as exhibits to the *pro forma* motion for summary judgment) were allegedly served only after the FCMC had already set the matter down for mediation.

26. The Court's mediation notice and order contained express language that suspended discovery until after the mediation was concluded.

4

27. Moreover, in spite of knowing Plaintiff's legal positions as set forth in his *pro se* answer and mediation statements, Velocity and JB never sought to address Plaintiff's legal defenses concerning notice and the statute of limitations.

28. At this point, Plaintiff hired the undersigned counsel who served discovery requests on Velocity (and to a limited extent on JB), and moved for relief under Ohio R. Civ. P. 56(F) to extend certain dates.

29. Meantime, JB sent Plaintiff's counsel a set of certain limited documents which included an unsigned document dated March 11, 2022 that purports to be a 30-Day Validation Notice prepared by JB.

30. The FCMC granted Plaintiff's Rule 56(F) motion on November 10, 2022 giving Velocity until December 1, 2022 to fully respond to Plaintiff's discovery requests, and giving Plaintiff until December 22, 2022 to file a supported reply to Velocity and JB's motion for summary judgment.

31. JB sent Plaintiff's counsel a notice of dismissal of the FCMC (pursuant to Ohio R. Civ. P. 41(A)) by U.S. Mail[2], which Plaintiff's counsel received on or around December 12, 2022. The certificate of service attached to the Rule 41(A) Notice suggested that it was mailed on or around November 30, 2022.

32. The FCMC docket eventually established that Velocity's Rule 41(A) Notice was filed effective January 5, 2023.

---

[2] Plaintiff notes here that his counsel was in regular contact with JB by email after entering their appearance in September 2022. Although it would have been easy and contemporaneous, JB did not send Plaintiff's counsel a copy of the Rule 41(A) Notice of Dismissal by email.

## INDIVIDUAL COUNT I

### FDCPA –VELOCITY

33. All statements made in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

34. At times relevant to this matter, Plaintiff once owed a "debt" to CPS, as above-described, within the meaning of 15 U.S.C. § 1692a(4).

35. At all times relevant to this matter, Plaintiff was/is a "consumer" with respect to this "debt" within the meaning of 15 U.S.C. § 1692a(3).

36. At times relevant to this matter, CPS was considered a "creditor" within the meaning of 15 U.S.C. § 1692a(4).

37. By purchasing the CPS "debt" after default, Velocity became a "debt collector" subject to the requirements of the FDCPA within the meaning of 15 U.S.C. § 1692a(6).

38. At all times relevant to this matter, JB was / is a "debt collector" subject to the requirements of the FDCPA within the meaning of 15 U.S.C. §1692a(6).

39. At all times relevant to this matter, JB acted as Velocity's agent to effect collection of this debt.

40. Velocity's complaint prepared by JB and filed in the above-described FCMC case constitutes a "communication" within the meaning of 15 U.S.C. § 1692a(2)[3].

41. Velocity's request for admissions allegedly prepared and served by JB on Plaintiff on June 27, 2022 constitutes a "communication" within the meaning of 15 U.S.C. § 1692a(2).

---

[3] Plaintiff notes that the complaint is a formal pleading within the meaning of 15 U.S.C. § 1692g(d) and is not treated as an "initial communication" for the purposes of that section, but the complaint serves as a communication under the FDCPA for all other purposes. Plaintiff notes further that all other papers sent by Velocity and JB to Plaintiff in the context of the FCMC suit are also communications to the extent their animating purpose is to convey information regarding the debt and / or to make payment on the debt more likely.

42.     Velocity's motion for leave to file motion for summary judgment *instanter* prepared by JB and served on Plaintiff on or around August 30, 2022 constitutes a "communication" within the meaning of 15 U.S.C. § 1692a(2).

43.     Velocity's motion for summary judgment prepared by JB and served on Plaintiff after August 30, 2022 constitutes a "communication" within the meaning of 15 U.S.C. § 1692a(2).

44.     Velocity violated the FDCPA in the following ways:

a.   Velocity caused JB to file and serve a complaint that expressly represented that Velocity notified Plaintiff of the assignment of the subject debt from CPS and demanded that Plaintiff make payment.

    i.   This representation was false in violation of 15 U.S.C. § 1692e because Velocity never sent Plaintiff such a notice.

    ii.   In addition to being factually false, this representation was material in nature because it misled and confused Plaintiff into believing that he forewent at least one (1) opportunity before the FCMC suit was filed to avoid the consequences of dealing with a formal suit.

    iii.   Plaintiff has been actually damaged by this false representation by losing earnings researching, investigating and attending to the allegations set forth in the improper FCMC suit, by suffering damage to his consumer credit rating by virtue of the unlawful collections engaged in by Velocity, and by suffering from humiliation, embarrassment and emotional distress directly related to the unlawful FCMC suit.

b. Velocity caused to be filed and served, a complaint that expressly represented that Plaintiff could still be lawfully sued in Ohio to recover over $7,700.00 on a consumer debt.

    i. This representation was factually and legally false in violation of 15 U.S.C. §§ 1692e(2)(A) and (5).

    ii. The debt owed to CPS became fully due by Plaintiff's default on or before June 30, 2016.

    iii. The cause of action for breach of the debt's Retail Installment Sale Contract accrued originally in favor of CPS.

    iv. CPS is a California corporation and Plaintiff's installments payments were sent to CPS in California.

    v. The statute of limitations ("SOL") applicable to Plaintiff's consumer transaction with CPS is / was controlled by Ohio's "Borrowing Statute" - R.C. §2305.03(B) - which applies the SOL of shortest duration if the cause of action accrues in a jurisdiction foreign to Ohio.

    vi. California's SOL for this type of consumer transaction is four (4) years by virtue of - CCP - California Code of Civil Procedure, 337(a).

    vii. The SOL for suit on Plaintiff's debt to CPS expired after June 2020.

    viii. Velocity caused JB to perpetuate such false representations in other communications made to Plaintiff in the course of the FCMC suit as described above (including but not limited to the alleged requests for admissions, the motion for leave to file motion for judgment *instanter*, and the motion for summary judgment and attached affidavits thereto).

8

ix. In addition to being factually false, Velocity's representation(s) were material in nature because they misled and confused Plaintiff into believing that he could still be subject to an Ohio lawsuit for this stale CPS debt, and suffer the various consequences of attending to such a suit.

x. Plaintiff has been actually damaged by this false representation by losing earnings researching, investigating and attending to the allegations set forth in the improper FCMC suit, by suffering damage to his consumer credit rating by virtue of the unlawful collections engaged in by Velocity, and by suffering from humiliation, embarrassment and emotional distress directly related to the unlawful FCMC suit.

c. Velocity caused the dissemination of additional collection communications to be sent to Plaintiff without providing Plaintiff with any opportunity to obtain proper validation of the debt.

i. Upon information and belief, Velocity did not independently comply with 15 U.S.C. §1692g.

ii. Yet, Velocity caused JB to allegedly serve discovery and to file motions without timely complying with 15 U.S.C. § 1692g by sending Plaintiff an appropriate validation notice as prescribed and or permitted by the Consumer Financial Protection Bureau - 12 CFR 1006.34(d)(2).

iii. In spite of falsely representing that Velocity sent a Plaintiff an appropriate validation notice, Velocity was required to send Plaintiff such a notice within five days after an initial communication.

    iv.  Velocity caused its agent, JB, to send additional communications following the filing of the FCMC complaint without timely complying the FDCPA's debt validation requirements.

    v.  Plaintiff has been actually damaged by Velocity's actions by losing earnings researching, investigating and attending to the allegations set forth in the improper FCMC suit, by suffering damage to his consumer credit rating by virtue of the unlawful collections engaged in by Velocity, and by suffering from humiliation, embarrassment and emotional distress directly related to the unlawful FCMC suit.

d.  Velocity's time-barred FCMC suit violates 15 U.S.C. §1692d.

    i.  Causing the FCMC suit to be filed and served following a known SOL lapse is conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of a debt.

    ii.  Plaintiff has been actually damaged by Velocity's actions by losing earnings researching, investigating and attending to the allegations set forth in the improper FCMC suit, by suffering damage to his consumer credit rating by virtue of the unlawful collections engaged in by Velocity, and by suffering from humiliation, embarrassment and emotional distress directly related to the unlawful FCMC suit.

e.  Velocity's time-barred FCMC suit violates 15 U.S.C. §1692f.

    i.  Causing the FCMC suit to be filed and served following a known SOL lapse constitutes unfair and unconscionable means to collect a debt.

    ii.  Plaintiff has been actually damaged by Velocity's actions by losing earnings researching, investigating and attending to the allegations set forth in the improper FCMC suit, by suffering damage to his consumer credit rating by virtue of the unlawful collections engaged in by Velocity, and by suffering from humiliation, embarrassment and emotional distress directly related to the unlawful FCMC suit.

## INDIVIDUAL COUNT II

### OCSPA –VELOCITY

45.    All statements made in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

46.    Ohio law is settled: "[V]arious violations of the FDCPA constitute a violation of the OCSPA. * * * [T]he purpose of both acts is to prohibit both unfair and deceptive acts and this court holds that any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03." *Taylor v. First Resolution Corp*. 148 Ohio St.3d 627, 654 (2016).

47.    Velocity is a "supplier" under the OCSPA within the meaning of R.C. §1345.01(C).

48.    Plaintiff is a "consumer" under the OCSPA within the meaning of R.C. §1345.01(D).

49.    Plaintiff's former debt owed to CPS constitutes a "consumer transaction" under the OCSPA within the meaning of R.C. §1345.01(A).

50.    Each FDCPA violation alleged and described above constitutes an actionable violation of the OCSPA entitling Plaintiff to recover statutory and actual damages under R.C. §1345.09 in addition to his rights under the FDPCA.

## INDIVIDUAL COUNT III

### FDCPA – JB

51.     All statements made in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

52.     At times relevant to this matter, Plaintiff's once owed a "debt" to CPS, as above-described, within the meaning of 15 U.S.C. § 1692a(4).

53.     At all times relevant to this matter, Plaintiff was/is a "consumer" with respect to this "debt" within the meaning of 15 U.S.C. § 1692a(3).

54.     At times relevant to this matter, CPS was considered a "creditor" within the meaning of 15 U.S.C. § 1692a(4).

55.     By purchasing the CPS "debt" after default, Velocity became a "debt collector" subject to the requirements of the FDCPA within the meaning of 15 U.S.C. § 1692a(6).

56.     At all times relevant to this matter, JB was / is a "debt collector" subject to the requirements of the FDCPA within the meaning of 15 U.S.C. §1692a(6).

57.     At all times relevant to this matter, JB acted as Velocity's agent to effect collection of this debt.

58.     The complaint JB prepared and filed in the above-described FCMC case constitutes a "communication" within the meaning of 15 U.S.C. § 1692a(2)[4].

59.     JB's request for admissions allegedly served on Plaintiff on June 27, 2022 constitutes a "communication" within the meaning of 15 U.S.C. § 1692a(2).

---

[4] Plaintiff notes that the complaint is a formal pleading within the meaning of 15 U.S.C. § 1692g(d) and is not treated as an "initial communication" for the purposes of that section, but the complaint serves as a communication under the FDCPA for all other purposes.  Plaintiff notes further that all other papers sent by Velocity and JB to Plaintiff in the context of the FCMC suit are also communications to the extent their animating purpose is to convey information regarding the debt and / or to make payment on the debt more likely.

60.     JB's motion for leave to file motion for summary judgment *instanter* served on Plaintiff on or around August 30, 2022 constitutes a "communication" within the meaning of 15 U.S.C. § 1692a(2).

61.     JB's motion for summary judgment served on Plaintiff after August 30, 2022 constitutes a "communication" within the meaning of 15 U.S.C. § 1692a(2).

62.     JB violated the FDCPA in the following ways:

a.  JB filed and served a complaint that expressly represented that Velocity notified Plaintiff of the assignment of the subject debt from CPS and demanded that Plaintiff make payment.

    i.   This representation was false in violation of 15 U.S.C. § 1692e because Velocity never sent Plaintiff such a notice.

    ii.  In addition to being factually false, this representation was material in nature because it misled and confused Plaintiff into believing that he forewent at least one (1) opportunity before the FCMC suit was filed to avoid the consequences of dealing with a formal suit.

    iii. Plaintiff has been actually damaged by this false representation by losing earnings researching, investigating and attending to the allegations set forth in the improper FCMC suit, by suffering damage to his consumer credit rating by virtue of the unlawful collections engaged in by JB, and by suffering from humiliation, embarrassment and emotional distress directly related to the unlawful FCMC suit.

b.  JB filed and served a complaint that expressly represented that Plaintiff could still be lawfully sued in Ohio to recover over $7,700.00 on a consumer debt.

13

i. This representation was factually and legally false in violation of 15 U.S.C. §§ 1692e(2)(A) and (5).

ii. The debt owed to CPS became fully due by Plaintiff's default on or before June 30, 2016.

iii. The cause of action for breach of the debt's Retail Installment Sale Contract accrued originally in favor of CPS.

iv. CPS is a California corporation and Plaintiff's installments payments were sent to CPS in California.

v. The statute of limitations ("SOL") applicable to Plaintiff's consumer transaction with CPS is / was controlled by Ohio's "Borrowing Statute" - R.C. §2305.03(B) - which applies the SOL of shortest duration if the cause of action accrues in a jurisdiction foreign to Ohio.

vi. California's SOL for this type of consumer transaction is four (4) years by virtue of - CCP - California Code of Civil Procedure, 337(a).

vii. The SOL for suit on Plaintiff's debt to CPS expired after June 2020.

viii. JB perpetuated such false representations in the complaint and in other communications in the course of the FCMC suit as described above (including but not limited to the alleged requests for admissions, the motion for leave to file motion for judgment *instanter*, and the motion for summary judgment and attached affidavits thereto).

ix. In addition to being factually false, JB's representation(s) were material in nature because they misled and confused Plaintiff into believing that he could

still be subject to an Ohio lawsuit for this stale CPS debt, and suffer the various consequences of attending to such a suit.

    x. Plaintiff has been actually damaged by this false representation by losing earnings researching, investigating and attending to the allegations set forth in the improper FCMC suit, by suffering damage to his consumer credit rating by virtue of the unlawful collections engaged in by JB, and by suffering from humiliation, embarrassment and emotional distress directly related to the unlawful FCMC suit.

c. JB caused the dissemination of additional collection communications to be sent to Plaintiff without providing Plaintiff with any opportunity to obtain proper validation of the debt.

    i. Upon information and belief, JB did not independently comply with 15 U.S.C. §1692g.

    ii. Yet, JB allegedly served discovery and filed motions without timely complying with 15 U.S.C. § 1692g by sending Plaintiff an appropriate validation notice as prescribed and or permitted by the Consumer Financial Protection Bureau - 12 CFR 1006.34(d)(2).

    iii. In spite of falsely representing that Velocity sent a Plaintiff an appropriate validation notice, JB was required to send Plaintiff such a notice within five days after an initial communication.

    iv. JB claims to have sent Plaintiff a § 1692g notice prior to suit, but Plaintiff denies ever receiving such notice.

     v.  JB sent the complaint, which did not constitute an "initial communication" for the purposes of § 1692g, but also sent additional communications following the filing of the FCMC complaint without timely complying the FDCPA's debt validation requirements.

     vi.  Plaintiff has been actually damaged by JB's actions by losing earnings researching, investigating and attending to the allegations set forth in the improper FCMC suit, by suffering damage to his consumer credit rating by virtue of the unlawful collections engaged in by JB, and by suffering from humiliation, embarrassment and emotional distress directly related to the unlawful FCMC suit.

d.  JB's time-barred FCMC suit violates 15 U.S.C. §1692d.

     i.  Causing the FCMC suit to be filed and served following a known SOL lapse is conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of a debt.

     ii.  Plaintiff has been actually damaged by JB's actions by losing earnings researching, investigating and attending to the allegations set forth in the improper FCMC suit, by suffering damage to his consumer credit rating by virtue of the unlawful collections engaged in by JB, and by suffering from humiliation, embarrassment and emotional distress directly related to the unlawful FCMC suit.

e.  JB's time-barred FCMC suit violates 15 U.S.C. §1692f.

     i.  Causing the FCMC suit to be filed and served following a known SOL lapse constitutes unfair and unconscionable means to collect a debt.

ii. Plaintiff has been actually damaged by JB's actions by losing earnings researching, investigating and attending to the allegations set forth in the improper FCMC suit, by suffering damage to his consumer credit rating by virtue of the unlawful collections engaged in by JB, and by suffering from humiliation, embarrassment and emotional distress directly related to the unlawful FCMC suit.

## **INDIVIDUAL COUNT IV**

### OCSPA – JB

63. All statements made in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

64. Ohio law is settled: "[V]arious violations of the FDCPA constitute a violation of the OCSPA. * * * [T]he purpose of both acts is to prohibit both unfair and deceptive acts and this court holds that any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03." *Taylor v. First Resolution Corp*. 148 Ohio St.3d 627, 654 (2016).

65. JB is a "supplier" under the OCSPA within the meaning of R.C. §1345.01(C).

66. Plaintiff is a "consumer" under the OCSPA within the meaning of R.C. §1345.01(D).

67. Plaintiff's former debt owed to CPS constitutes a "consumer transaction" under the OCSPA within the meaning of R.C. §1345.01(A).

68. Each FDCPA violation alleged and described above constitutes an actionable violation of the OCSPA entitling Plaintiff to recover statutory and actual damages under R.C. §1345.09 in addition to his recovers under the FDPCA.

## CLASS COUNT I

### FDCPA – VELOCITY

69.    All statements made in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

70.    This action is brought, and may properly proceed, as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and 23(c)(4).

71.    Plaintiff will be seeking certification of the following classes[5]:

    a.  <u>Ohio Class One</u>:

        i.  Each member owed a debt to CPS;

        ii.  Each member's respective debt to CPS was based upon money, property, insurance, or services and which was obtained primarily for personal, family, or household purposes;

        iii.  Each member's respective debt to CPS was later assigned, sold or transferred after default to Velocity; and

        iv.  Upon which, Velocity filed civil suit in any Ohio court against such member within one (1)  year before the date of filing of this class action lawsuit and more than four (4) years following the default as to CPS.

    b.  <u>Ohio Class Two</u>:

        i.  Each member owes a debt purchased by or transferred to Velocity after default;

        ii.  Each member's respective debt was based upon money, property, insurance, or services and which was obtained primarily for personal, family, or household purposes;

---

[5] Plaintiff reserves the right upon completion of discovery and filing of his class certification papers to amend or supplement any class definition or criteria.

    iii.   Within the one (1) year period prior to the filing of this class action lawsuit; Velocity represented to each such respective member and/or any third party that Velocity independently demand payments and notified such respective member of the debt assignment; and

    iv.   Following which Velocity failed to timely provide the notice required by 15 U.S.C. §1692g.

72.   <u>Numerosity</u> – these classes are so numerous that joinder of each respective member would be impracticable.  Plaintiff is aware that his debt was one of 1,854 CPS similar debts purchased by Velocity.

73.   <u>Commonality / Predominance</u> – Many questions of law and fact are common to the members of the classes and such questions predominate over questions relating to any individual member.  Common factual questions and legal issues include, but are not necessarily limited to, the following:

    a.   Whether filing suits by or on behalf of a debt collector on consumer debts past the statute of limitations violates the FDCPA;

    b.   Whether a debt collector's failure to timely provide appropriate debt validation notices as described in 15 U.S.C. §1692g violates the FDCPA;

    c.   Velocity's net worth and documentation supporting such;

    d.   Statutory damages under the FDCPA[6] under 15 U.S.C. §1692k(a)(2)(B);

---

[6] It is doubtful that Plaintiff will seek to certify any issues related to actual damages (e.g. out of pocket losses, pecuniary losses, emotional distress etc…) which are legally available to each putative member pursuant to 15 U.S.C. §1692k(a)(1) as such issues tend to be too particularized.  Plaintiff will seek to resolve his individual actual damages in the context of his individual claims.  However, it is likely Plaintiff will petition the Court in later stages to resolve such particularized class issues in one or more of the type of subsequent proceedings envisioned and discussed, for example, *in In re Visa Check / Master Money Antitrust Litigation*, 280 F.3d 124, 141 (2nd Cir. 2001)

e.   Velocity's debt boarding procedures, collection procedures, document retention, and error avoidance procedures;

f.   To the extent applicable or available to Velocity, *Bona fide* error defenses under the FDCPA;

g.   Reasonableness of Plaintiff's legal fees and costs.

74.   <u>Typicality</u> – Plaintiff's claims are typical of the claims of each class because like each absent member:  (a) Plaintiff's debt owed originally to CPS was consumer in nature (b) was transferred to Velocity after default; (c) was about which Velocity misrepresented that it notified him (and / or otherwise failed to timely comply with 1692g) and demanded payment, and (d) was upon which Velocity unlawfully caused the filing of a civil suit against him beyond the applicable statute of limitations.   Like the absent class members, Plaintiff's suffered actual damages in several forms including but not limited to lost wages, out of pocket costs attending to resolving the matter, and damages for emotional distress, humiliation and embarrassment.  Like the absent class members and most relevant to this class action, Plaintiff is also entitled to statutory damages under the FDCPA.  Moreover, *vis a vis* Plaintiff and the absent class members, Velocity maintains the same defenses, to the extent such defenses could even be applicable in these instances.

75.   <u>Adequacy</u> – Plaintiff is and will remain an adequate representative for these classes. Plaintiff has no interest or claims adverse to the absent class members, and intends to vigorously prosecute this case.  Furthermore, Plaintiff has hired competent counsel who are highly experienced in managing and litigating complex FDCPA class actions, and consumer rights litigation.

76.    <u>Superiority</u> – This class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the classes. The statutory damages permitted for *pro rata* distribution to each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Velocity's conduct. Independent prosecution of individual suits by each class member is unlikely be commensurate with the cost and time burdens as compared with the anticipated monetary outcome. Moreover, individualized litigation presents a potential for inconsistent or contradictory judgments and such litigation increases the delay and expense to all parties, and to the court system due to the nature of the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication of all issues (save actual damages[7] of the absent class members), an economy of scale, and comprehensive supervision by a single court.

77.    <u>Objective Administrative Feasibility</u> – Velocity holds itself out to maintain a "proven collection network" and "sophisticated analytics" together with "sophisticated account management methodology"[8]. Upon information and belief, Velocity maintains all of the business records necessary for administration and prosecution of this class action. Determinations as to membership in the classes will not be based upon separate, individualized hearings or reviews, but will instead be based upon precise objective criteria which will be gleaned from a comprehensive review of Velocity's records and collection

---

[7] It is worth noting again that the particularized issues related to actual damages will and should be reserved for a joined or planned proceeding (or set of proceedings) subsequent to resolution of the main FDCPA issues in this case. The Court may utilize administrative tools and group noticing to effectively manage and resolve the individualized issues related to actual damages.

[8] https://velocityrecoveries.com/about-velocity/

methodology.  At a minimum, Velocity will retain the data crucial to objective formation of these classes.

## CLASS COUNTS II-X (RESERVED)

### FDCPA - VELOCITY

78.  All statements made in all preceding paragraphs are incorporated into these COUNTS as if fully rewritten.

79.  Upon information and belief, Velocity is an active participant in the post-default debt buying industry and makes bulk portfolio purchases of stale consumer debts for pennies on the dollar from numerous financial companies like CPS.

80.  Upon information and further belief, Velocity routinely uses the Ohio court system to obtain payment from Ohio consumers, whether via threats or actual lawsuits.

81.  Plaintiff's own cursory and limited audit of certain public records in the Franklin County, Ohio Court of Common Pleas reveals that Velocity acquires vast quantities of older consumer debts from companies like "WebBank", "Upstart Network, Inc.", "Prosper Funding, Inc.", and "Cross River Bank" and regularly files lawsuits against Ohio consumers to collect them.

82.  The aged debt pools / portfolios purchased by Velocity upon which such suits have been (and will be) brought are very much like the suit brought against Plaintiff, and very much like the debts Velocity acquired from CPS.

83.  Plaintiff reserves the right upon completion of discovery to expand upon and add to both the nature and size of the Ohio (and/or Nationwide) FDCPA classes and subclasses that Plaintiff intends to certify.

## CLASS COUNTS XI-XX (RESERVED)

### FDCPA - JB

84.  All statements made in all preceding paragraphs are incorporated into these COUNTS as if fully rewritten.

85.  Upon information and belief, JB serves as the main lawyer debt collector for Velocity for Ohio debt collections and lawsuits.

86.  Upon information and further belief, Velocity is an active participant in the post-default debt buying industry and makes bulk portfolio purchases of stale consumer debts for pennies on the dollar from numerous financial companies like CPS.

87.  Upon information and further belief, Velocity routinely uses the Ohio court system through its agent JB, to obtain payment from Ohio consumers, whether via threats or actual lawsuits.

88.  Plaintiff's own cursory and limited audit of certain public records in the Franklin County, Ohio Court of Common Pleas reveals that Velocity acquires vast quantities of older consumer debts from companies like "WebBank", "Upstart Network, Inc.", "Prosper Funding, Inc.", and "Cross River Bank" and through its agent JB, regularly files lawsuits against Ohio consumers to collect them.

89.  The aged debt pools / portfolios purchased by Velocity upon which such suits have been (and will be) brought are very much like the suit brought against Plaintiff by Velocity's agent JB, and very much like the debts Velocity acquired from CPS.

90.  Plaintiff reserves the right upon completion of discovery to expand upon and add to both the nature and size of the classes and subclasses that Plaintiff intends to certify and may

include, if appropriate, Ohio (and/or Nationwide) FDCPA classes as to JB's own debt collection conduct.

WHEREFORE, Plaintiff, individually and on behalf of other persons similarly situated, seeks all relief appropriate and available under the FDCPA and OCSPA, and any other equitable or legal relief to which Plaintiff may be entitled.

Respectfully submitted,

NOBILE & THOMPSON CO., L.P.A.

/s/      James E. Nobile
James E. Nobile (0059705)
Eric E. Willison (0066795) Of Counsel
285 S. Liberty St. Suite 1D
Powell, Ohio 43065
(614) 529-8600 PH1
(614) 300-2764 PH2
jenobile@ntlegal.com
Counsel for Plaintiff